IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE P. MURPHY**<br>**4665 Kirkland Place**<br>**Alexandria, VA 22311**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**KEVIN MCALEENAN, ACTING**<br>**SECRETARY, U.S. DEPARTMENT OF**<br>**HOMELAND SECURITY**<br>**2707 Martin Luther King Jr. Ave., S.E.**<br>**Washington, DC 20528-0525**<br><br>**Service Agent:**<br>   **Office of General Counsel,**<br>   **United States Department**<br>   **of Homeland Security,**<br>   **Washington, DC 20528**<br><br>    **Defendant.** | **Civ. No. _____**<br><br>**Jury Trial Demand** |

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Jane P. Murphy, by and through counsel, Jay P. Holland and the law firm of Joseph, Greenwald & Laake, P.A., and brings this Complaint seeking Judgment against the U.S. Department of Homeland Security, United States Secret Service ("Defendant" or "Agency"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Age Discrimination in Employment Act ("ADEA"), for employment discrimination based upon sex and age.

## JURISDICTION & VENUE

1. This Court has jurisdiction of Plaintiff's claims herein pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 42 U.S.C. § 2000(e).

2. Venue herein is proper under 28 U.S.C. § 1391 (b) and (c).

3. Proper venue is in this Court as Defendant maintains its principal office and employment records within this judicial district and within the jurisdictional boundaries of the District of Columbia.

## PARTIES

4. Plaintiff is a fifty-nine (59) year old adult, female resident of the State of Virginia, residing at 4665 Kirkland Place, Alexandria, VA 22311, and a former Assistant Director ("AD") for the Office of Government and Public Affairs for the U.S. Secret Service ("Secret Service"), who was constructively discharged based upon her age and gender.

5. Defendant is a federal law enforcement agency under the Department of Homeland Security charged with conducting investigations and protecting the nation's leaders and past leaders. Defendant maintains its principal office at 950 H Street, N.W., #7800, Washington, DC 20223.

6. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a), and an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b). Defendant hired Plaintiff as an employee and is subject to the laws preventing discrimination and in employment as set forth more fully in the Counts that follow.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. For those counts that so require, all administrative requirements to filing this lawsuit have been satisfied: to wit, Plaintiff filed a formal administrative complaint based on age and gender discrimination with the Agency's Equal Employment Opportunity Commission ("EEOC") on April 22, 2015. The Agency determined that Plaintiff's case was a mixed case complaint that must be before the Merit Systems Protection Board ("MSPB"). Following a Final

Agency Decision on December 30, 2015 regarding MSPB jurisdiction, the case was appealed to the EEOC, which ultimately, on June 7, 2017, provided Plaintiff with a right to request a hearing before an EEOC Administrative Judge. After initially requesting a hearing on June 29, 2017, Plaintiff requested a Final Agency Decision on December 10, 2018. Plaintiff received a Final Agency Decision on April 1, 2019, providing for a ninety (90) day right to sue deadline for civil actions in federal court. Plaintiff timely files the instant complaint prior to the 90-day deadline.

## FACTS

8. At the time of Plaintiff's constructive discharge, she was fifty-five (55) years of age, and a GS-1811, Senior Executive Service ("SES") Assistant Director for the Office of Government and Public Affairs, United States Secret Service.

9. Plaintiff was a highly educated career federal employee, having received a Bachelor of Science degree in Finance from St. John's University and a Master's degree in Business Administration from Adelphi University. Plaintiff is a member of the International Association of Chiefs of Police.

1. Plaintiff's Secret Service career began in 1983 as a special agent assigned to the New York Field Office before being assigned to the Presidential Protective Division.

2. Plaintiff subsequently held management positions within the Intelligence Division, Office of Administration, and the Office of Professional Responsibility as an Inspector.

3. Prior to her last appointment as AD for the Office of Government and Public Affairs, Plaintiff served as Acting Assistant Director of the Office of Investigations, where she led the Secret Service's investigative directorate, developing and implementing policies for all Secret Service criminal investigations pertaining to counterfeit currency, financial crimes, and electronic crimes. Plaintiff also served as Deputy Assistant Director for the Office of Investigations, where

3

she managed domestic field office operations and key Secret Service headquarters investigative divisions, and as Deputy Assistant Director for the Office of Protective Research and the Office of Administration, where she oversaw the evaluation and implementation of technology-based protective countermeasures.

4. The Agency appointed Plaintiff as its Assistant Director of the Office of Government and Public Affairs in or about February 2013. In that role, Plaintiff managed the Secret Service liaison activities with the United States Congress, the Department of Homeland Security and other agencies, as well as members of the media and the general public.

5. Plaintiff remained in this position until her constructive discharge in or about January 2015. Throughout Plaintiff's tenure with the Agency, she possessed an excellent performance record.

6. On or about October 28, 2014, at the request of the newly appointed Acting Director, Joseph Clancy ("Clancy"), Plaintiff went to a meeting to brief Clancy about her directorate, the Office of Government and Public Affairs. Plaintiff believed this meeting to be a briefing because Clancy had only been appointed on October 6, 2014.

7. During the October 28, 2014 meeting, however, Clancy seemed more interested in Plaintiff's age and retirement status. Specifically, Clancy asked Plaintiff about her future plans and whether she was friends with Mark Copanzzi and Paul Morrissey, the other older Assistant Directors within the Agency.

8. Plaintiff informed Clancy that she had no plans to retire and that she found her position to be rewarding, noting that she looked forward to supporting him as Director. During this meeting, Clancy never raised any performance issues with Plaintiff, as her performance had always been stellar.

9. On or about January 13, 2015, Clancy and Deputy Director Alvin T. Smith ("Smith") called Plaintiff to another meeting. This time, Clancy told Plaintiff that she was being reassigned from the position of Assistant Director.

10. During the January 13, 2015 meeting, Clancy stated that his decision was based on the findings of the Blue Ribbon Panel and that he needed an innovative management team. The Blue Ribbon Panel was established following the events of September 19, 2014, when a lone individual leapt over the White House fence, onto the North Lawn, and ultimately into the White House itself. The Panel was to undertake a broader review of the Secret Service's protection of the White House compound and make recommendations.

11. At the meeting, Plaintiff informed Clancy that the Blue Ribbon Panel report provided that the Agency needed more training and increased staffing, to which Clancy added, "and leadership." Plaintiff expressed that the Blue Ribbon Panel did not interview her and that its findings related to White House security and not her directorate, as Plaintiff did not oversee staffing, hiring, training or White House Security programs.

12. As the January 13, 2015 meeting continued, Plaintiff asked if she could be reassigned within the United States Secret Service, and Clancy said "no." Clancy also told Plaintiff that other Assistant Directors were also going to be affected by his decision.

13. At that time, Plaintiff asked if Clancy's decision impacted only the Assistant Directors in the Metropolitan Retirement System, the retirement system for the oldest employees within the Agency. Clancy replied that he did not know about others' personal situations.

14. During the meeting, Plaintiff also asked, "So you are removing me from the United States Secret Service?" Deputy Director Smith answered, "Reassigned." During the conversation,

5

Clancy said that Plaintiff needed to make her decision in a day or two about accepting a reassignment or consider retiring in the next 30 days.

15. Neither Clancy nor Smith provided Plaintiff with a written notice, a position description, a location, or the agency position title for this supposed reassignment.

16. At the meeting, it became clear that Clancy referring to "innovative management team" meant that he was looking to promote younger staff who were not on the Metropolitan Retirement System.

17. On or about January 14, 2015, Plaintiff was scheduled to meet with Clancy to further discuss the reassignment, when Plaintiff received an email from Washington Post reporter Carol Leonnig, asking whether Plaintiff wanted to provide a comment for an article that Reporter Leonnig was writing about Plaintiff's removal and the removal of three other Assistant Directors from the Secret Service. Plaintiff did not respond, but later found out that the article included a statement from Clancy.

18. That same day, on or about January 14, 2015, Plaintiff met with Clancy and informed him that because of his decision to remove her, her "reputation was tarnished." Plaintiff also told him that her "reputation had been destroyed" because of his comments in the Washington Post article. Plaintiff then provided Clancy with her most recent 2014 performance evaluation, along with a letter awarding her an SES bonus. Plaintiff again requested to remain within the Secret Service, but Clancy, without justification, said he did not have an SES position for Plaintiff.

19. At the same January 14 meeting, Plaintiff asked if the reassignment meant she would be detailed to another agency as an employee of that agency, or still remain a Secret Service employee. Clancy said he did not know.

20. On or about January 21, 2015, Plaintiff again met with Clancy to obtain answers for the questions posed on January 14, 2015. During that January 21, 2015 meeting, Clancy informed Plaintiff that she was being reassigned to Customs and Border Protection ("CBP") and that she would have to be interviewed by the CBP Commissioner. Clancy advised that he did not know anything more about the reassignment position.

21. At the conclusion of the January 21 meeting, Plaintiff was forced to accept the option of retirement because of the unwarranted media attention that tarnished her reputation and because of the lack of knowledge and uncertainty of a reassignment.

22. Since Clancy's appointment as Acting Director, it became clear that Clancy and Smith were preparing to remove Plaintiff from her AD position within the Agency. Clancy and Smith discriminated against Plaintiff based on her age and her gender. About one week prior to Plaintiff's retirement, Clancy and Smith replaced Plaintiff with a male SES employee who was more than five (5) years younger than her.

23. At the time of Plaintiff's removal in January 2015, she remained the only female Assistant Director. Also, during Plaintiff's tenure as AD, Clancy and Smith treated her less favorably than other male employees in terms of assignments, job tasks and how they communicated with her.

24. At the time of Plaintiff's removal in January 2015, she and the other three Assistant Directors removed from their positions were the four oldest Assistant Directors supporting Clancy. All four of them were also the only SES employees eligible for retirement under the Metropolitan Retirement System.

25.     Moreover, the removal action against Plaintiff, taken by Clancy and Smith, was inconsistent with Title 5 C.F.R. § 317.901, further evidencing discrimination, as the action was without basis.

26.     Throughout Plaintiff's tenure with the Secret Service, she never had a performance issue and always received excellent performance appraisals.  Also throughout Plaintiff's tenure, she received awards and recognition for her ideas and her performance.

27.     Most recently, just before her discharge from the Agency, on or about November 17, 2014, Plaintiff received an SES performance evaluation from Smith, noting a rating of "Achieved Excellence," which is the highest SES performance rating level. Smith's written comments recognized Plaintiff's professional performance and was consistent with the "Achieved Excellence" rating.

28.     On or about December 2014, Plaintiff also received an SES bonus award based upon her performance rating.

## COUNT I

### Discrimination Based on Age in Violation of the
### Age Discrimination in Employment Act of 1967
### 29 U.S.C. § 623(a)(1).

29.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as fully restated herein.

30.     By virtue of the acts described above, Defendant, by and through its employees, denied Plaintiff her employment rights, as guaranteed by the ADEA, when it discriminated against her by terminating her employment on the basis of her age.  Plaintiff was subjected to the aforementioned employment actions/conditions based on her age – and was subjected to said

conditions when those outside of Plaintiff's protected categories were treated differently and more favorably in their employment, and were not terminated like Plaintiff.

31. As a direct and proximate result of the discriminatory acts and conduct of Defendant, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and economic loss.

## COUNT II

### Discrimination Based on Sex in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000(e) *et seq.*

32. Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as fully restated herein.

33. By virtue of the acts described above, Defendant, by and through its employees, denied Plaintiff her employment rights, as guaranteed by Title VII, by treating her disparately and discriminating against her by terminating her employment on the basis of her sex. Plaintiff was subjected to the aforementioned employment actions/conditions based on her sex – and was subjected to said conditions when those outside of Plaintiff's protected categories were treated disparately and more favorably in their employment, and were not terminated like Plaintiff.

34. As a direct and proximate result of the discriminatory acts and conduct of Defendant, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and economic loss.

WHEREFORE, for the all of the aforementioned reasons, Plaintiff respectfully requests that an Order of Judgment be entered against the Defendant on all Counts and that full back pay and front pay be awarded, compensatory damages be awarded, along with attorneys' fees and costs.  Plaintiff also requests that Defendant be enjoined from further acts of discrimination in employment as contrary to federal law.  Further, Plaintiff demands judgment against Defendant for punitive damages, plus interest, and any other additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues of triable fact in the foregoing complaint.

DATE:  June 28, 2019

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/     Jay P. Holland
Jay P. Holland, Esq. (Bar No. 422258)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
jholland@jgllaw.com
*Counsel for Plaintiff*